IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIAN DAVID MCMURRER,
Petitioner,

v.

Case No. 21–CV–853–JPG

DAN SPROUL,
Respondent.

**<u>MEMORANDUM & ORDER</u>**

### I.   Introduction

This matter comes before the Court on petitioner Brian David McMurrer ("Petitioner" or "McMurrer") *pro se* petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 (Doc. 1) against Respondent Dan Sproul ("Respondent" or "Sproul"). Petitioner is incarcerated in U.S. Penitentiary in Milan, Michigan, ("FCI-Milan")[1]. Petitioner is currently challenging disciplinary actions taken against him finding that he violated prison rules against fighting while incarcerated at Federal Correction Institution Terre Haute ("FCC Terre Haute"). The petitioner is challenging the execution of his sentence on the grounds that the Bureau of Prisons ("BOP") improperly denied good-time credits and conducted unfair disciplinary proceedings.  Respondent has replied (Doc. 12). Petitioner did not file a reply.

### II.   Background

In June 2017, when this incident occurred, Petitioner was housed in FCC Terre Haute. On June 13 of that year Petitioner was charged with Prohibited Act Codes 224 (Assaulting Any

---

[1] Since Warden Sproul was Petitioner's immediate custodian at the time the Petition was filed, this Court retains jurisdiction over the Petition even though Petitioner has since been transferred to another facility. *See In re Hall*, 988 F.3d 376 (7th Cir. 2021). The transfer to a facility outside this district does not divest this Court of subject matter jurisdiction. *See Rumsfeld v. Padilla*, 542 U.S. 426, 440-41 (2004); *al-Marri v. Rumsfeld*, 360 F.3d 707, 712 (7th Cir. 2004) (citing *Ex Parte Endo*, 323 U.S. 283 (1944)).

1

Person), and 307 (Refusing to Obey an Order). According to an incident report staff were called for assistance when Petitioner threatened to kill himself. Petitioner indicates that the incident report was "written on me to cover-up the staff assault." (Doc. 1 at 2). The incident report states Petitioner was banging his head on the wall and continued to do so after being ordered to stop. (Doc. 12-1 at 6). After staff called for assistance, Petitioner allegedly pushed his cellmate against the wall and began striking him. Staff used pepper spray and Petitioner and his cellmate were escorted out for decontamination and treatment. *Id*. Medical records for Petitioner indicate he had "red raised areas" to his brow and forehead, swelling on his left side of his nose, bruising around his left eye and a laceration to his right brow. *Id*.

The incident report for the matter was delivered to the Petitioner on June 20, 2017, which was referred to the Unit Discipline Committee ("UDC"). The UDC began its investigation and referred the matter to the Discipline Hearing Officer ("DHO") on August 17, 2017. After a 5-day delay of the hearing due to the incident report being reinvestigated, Petitioner received a "Notice of Hearing Before the DHO" and a copy of his inmate rights. The extension was approved Warden Krueger. The Petitioner requested a staff representative and witness.

The DHO hearing was held on October 25, 2017. Petitioner was provided with a staff representative and a witness. Petitioner's staff representative said "[i]nmate made a request to have me review video. There is no video inside the cell where the assault occurred." (Doc. 12-1 at 5). Additionally, the witness stated "I don't want any problems. He never hit me." *Id*. Additionally, at the hearing, Petitioner stated "[i]t never happened. I never touched my cellie. Staff are trying to cover up that they assaulted me." *Id*.

The DHO found that Petitioner committed the acts of Assault without Serious Injury and Refusing to Obey an Order. *Id*. at 6. The DHO considered the reporting officer, witness statement

from the "cellie," The DHO relied upon the Incident Report, medical records, photographs, and Plaintiff's silence to the investigating lieutenant (which was used as an adverse inference against him). (Doc. 12-1 at 11). The DHO found he was "not convinced" by Petitioner's denial of the charge and believed he denied the charge to avoid "possible disciplinary sanctions." *Id*. at 12. The DHO did not find the "cellie" witness' testimony credible and finds the staff members' statements more credible and believable. *Id*. The DHO found there was no evidence presented that staff members conspired to falsely accuse Petitioner of misconduct and therefore, gave greater weight to the Incident Report, medical assessment, and photo evidence provided. *Id*. at 12. The DHO sanctioned Petitioner 27 days good conduct time, 90 days loss of phone, 90 days loss of commissary, and 30 days loss of visit. *Id.* The DHO report was delivered to Petitioner on October 11, 2018 after being finalized on November 16, 2017.

BOP regulations provide that if "evidence indicates that [an inmate] cannot understand the nature of…disciplinary proceedings, or cannot help in [his] own defense, disciplinary proceedings may be postponed until [the inmate] is competent to participate." 28 C.F.R. § 541.6(a). BOP Program Statement 5310.16, "Treatment and Care of Inmates with Mental Illness," provides guidelines for when the DHO refers incident reports to a psychologist. *See Id*. at ¶ 12. The DHO is to refer the following incident reports to a psychologist for determination of competence and responsibility: any incident report received by a CARE3-MH or CARE4-MH inmate; any incident report received by a CARE2-MH inmate where there appears to be a mental health concern; any incident reports for Code 228 involving self-harm; any incident report for Code 302, Misuse of Authorized Medicine. *Id*; Exhibit B, BOP Program Statement 5310.16, Treatment and Care of Inmates with Mental Illness, pg. 22.

As stated in this Court's Screening Order, the Petitioner bases his habeas petition on eight

separate complaints. They are the following:

> Specifically, he complains (1) witness testified to DHO "I never touched him"; (2) the warden never had good reason to waive an extension for over 3 months; (3) photographs were not provided to Petitioner to see at his disciplinary hearing because he was told there was a pending internal affairs investigation; (4) DHO report was not provided to Petitioner until over a year after his hearing; (5) medical report related to this incident contradicts the incident report; (6) DHO heard the case before the findings of the internal affair investigation of staff assault related to the claims; and (7) hallway video of incident was denied by DHO; and (8) a psychological evaluation was refused by DHO.

### III.     Analysis

The Attorney General, through the BOP, is responsible for administering a federal prisoner's sentence, including the computation of sentence credit. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *United States v. Walker*, 917 F.3d 989, 993-94 (7th Cir. 2019). An inmate can challenge the calculation of his sentence, including time credits, in a § 2241 petition, *Setser v. United States*, 566 U.S. 231, 244 (2012); *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). An inmate can properly address good time credits and fairness of disciplinary proceedings in a federal habeas. *See Wolff v. McDonnell*, 418 U.S. 539, 558, 566 (1974).

A federal inmate may file a § 2241 petition to challenge the revocation of good conduct credit on the grounds that he did not receive due process in connection with that disciplinary decision. *Jones v. Cross*, 637 F.3d 841 (7th Cir. 2011). Although inmates retain due process rights in connection with prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, due process in the prison disciplinary context requires, at a minimum, that the inmate receive:

> (1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Jones*, 637 F.3d at 845 (citing *Wolff*, 418 U.S. at 563-71; *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007)).

Due process also requires that there be "some evidence [to] support[ ] the decision ... to revoke good time credit." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *see Jones*, 637 F.3d at 845. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The evidence to support the disciplinary decision does not need to "logically preclude[ ] any conclusion but the one reached by the disciplinary board." *Id*. at 457.

### A. Exhaustion of Administrative Remedies

Generally, before an inmate can file a § 2241 petition, he must exhaust the BOP administrative remedy procedures. *Walker*, 917 F.3d at 994; *see McCarthy v. Madigan,* 503 U.S. 140, 144 (1992). Although there is no express exhaustion requirement in § 2241, with few exceptions, courts generally require it. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) (noting common-law exhaustion rule for § 2241 actions); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (court "review[s] a claim concerning the computation of a sentence only after administrative remedies have been exhausted"); 28 C.F.R. § 542.10 *et seq*. (describing the BOP's administrative remedy process). However, the Court may excuse the failure to exhaust where (1) requiring exhaustion would cause prejudice because of the time required; (2) the agency cannot resolve the issue or grant the requested relief; (3) exhaustion would be futile because the agency is biased or has already determined the issue; or (4) substantial constitutional questions are raised. *Gonzalez v. Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (internal quotations omitted).

The administrative appeal procedure is as follows:

> An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in § 542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.

28 C.F.R. § 542.15. Here, Respondent argues that Petitioner did not raise the psychology referral when submitting his administrative remedy requests. The Court has reviewed the appeal on Form BP-10 and while it also contains eight (8) reasons for appeal, none of them include the failure to raise the psychology referral. (Doc. 12-1 at 47). Additionally, Petitioner's petition cites no reason for his failure to administratively appeal this contention. Additionally, Petitioner's has filed no reply. Therefore, the Court finds that there is no prejudice, the agency cannot resolve the issue, exhaustion would not be futile because it is biased or already determined the issue, and this does not include a substantial constitutional issue.

Resolving this issue on the merits of whether this claim violates a due process violation, failure to provide a psychology referral does not constitute a due process violation. Therefore, the Court cannot say that Petitioner was wrongfully and constitutionally denied due process for failure to have a mental health competency evaluation. *Marshall v. Oliver*, No. 14-CV-03184-LTB, 2015 WL 4743186, at *6 (D. Colo. Aug. 11, 2015), aff'd, 644 F. App'x 839 (10th Cir. 2016) ("The mere fact that Applicant stated he committed the offense because he was under psychological distress does not, by itself, give rise to the appearance that he is mentally ill. The record is devoid of any evidence that would lead any staff member to believe he was mentally ill. As such, no psychological exam was required.").

### B. Whether "Some Evidence" Standard was Satisfied

The Court evaluates whether Petitioner's other claims are supported by "some evidence" in the record. Such an evaluation does not include an independent assessment of credibility of witnesses or weighing of the evidence. *Hill*, 472 U.S. at 455-56. The Court simply looks to see whether there is "any evidence" in the record to support the DHO's conclusion. *Id*. Here, the Court finds that the charges of Assaulting a Person and Refusing to Obey an Order are sufficiently supported by the record. The DHO reviewed the Incident Report, medical records photographs of the evidence, and Plaintiff's silence to the investigating lieutenant. The DHO weighed the evidence and found the staff members' statements more credible and believable. The Court finds the DHO's decision is supported by "some evidence." The incident report itself could support such a finding. The "some evidence" standard is a low standard, one that can be made on a report alone that can describe the infraction in sufficient detail. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) ("For its decision, the CAB relied on Fields' disciplinary report. That report alone provides "some evidence" for the CAB's decision.").

### C. Due Process

Next, the Court evaluates whether Petitioner was denied due process. The Court will take Petitioner's remaining arguments in turn. Specifically, Petitioner whether the warden had "good cause" to waive an extension before the disciplinary committee, the fact photographs were not provided at his disciplinary hearing, DHO report was not provided to Petitioner until a year after his hearing, DHO heard the case before the findings of the internal affairs investigation results, and hallway video of the incident was denied by the DHO. The Seventh Circuit has been clear that due process for inmates is the following: written notice at least 24 hours before hearing, opportunity to call witnesses and present documentary evidence, and a written by fact finder and

reasons for disciplinary action. *Jones*, 637 F.3d at 845.

Here, Respondent responds and indicates that the Program Statement indeed requires approval for extension beyond five work days and here, the Incident Report was referred to the UDC more than five days after it was issued. (Doc. 12 at Exhibit C, Program Statement 5270.90, p. 25). However, Respondent indicates the text of Regulation 541.7 allows flexibility when the UDC reviews any incident report where it states that UDC will "ordinarily" review an incident report within five working days. *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1052 – 53 (7th Cir. 2013) (analysis of a statute or regulation "'begins with the…text'"). The Court agrees. Additionally, the Court finds that the extension was ultimately approved and Petitioner was given notice. Therefore, it was accordance with the regulations and relevant Program Statement. Additionally, the Court finds that Petitioner's due process rights here were not affected. *See Jones*, 637 F.3d at 846 (three week delay in UDC hearing did not violate inmate's due process rights).

Petitioner's claim that his due process was violated because he did not receive the DHO report until a year of its issuance did not violate due process. The delay in the written report did not affect his ability to present evidence in front of the DHO or his ability to exhaust his administrative remedies. The Court finds that his due process was not violated by the failure to receive the report.

Lastly, Petitioner claims that he was not able to view photographs and video. Due process requires that an inmate have an opportunity to call witnesses and present documentary evidence when consistent with institutional safety. *Jones*, 637 F.3d at 845. Here, Respondent responds and states the following:

> Finally, Petitioner's claims that his rights were violated because he was not allowed to view photographs or video also fail. Again, even without access to visual evidence, there was sufficient evidence to support the DHO's findings based on the Incident Report alone, which Petitioner had access to. Further, as stated by

Petitioner's staff representative, there was no video inside Petitioner's cell.
(Doc. 12 at 12).

However, Respondent does not adequately explain why he was denied access to the hallway video or why it would be against institutional safety to provide him access. The Court has already found that the DHO's evidence was supported by "some evidence." However, due process requires that that an inmate receive an opportunity to present his documentary evidence. The Court agrees the record contains evidence that there was no video footage *inside the cell*, but Petitioner requested video footage of the hallway. Respondent provides no reason that it would be against institutional safety to have provided Petitioner this argument. For this reason, the Court finds that Petitioner was denied due process for his failure to be given access to present documentary evidence. Petitioner indicates that the hallway video was inherent to his defense because it shows that the lieutenant was called to the incident because Petitioner "refused to uncuff and was wanting to talk to psychology" which would contradict the incident report. Respondent does not adequately address this issue or relieve the duty to produce. *Whitmore v. Jones*, 490 F. Appx. 122, 124 (10th Cir. 2012) (failure to "produce" occurs when BOP refuses to provide an inmate with video footage of an alleged incident after the inmate specifically requests to view such video footage prior to a disciplinary hearing); *see also Davis v. Davis*, No. 11–cv–00769–MSK, 2011 WL 5075617, at *5 (D.Colo. Oct. 25, 2011) (highlighting the need for the inmate to request review of the video footage prior to the disciplinary hearing). This requirement to produce is relieved where there is an undue hazard to institutional safety or correctional goals in permitting the inmate to view the particular footage at issue. *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007). As indicated previously, Respondent does not provide any argument as to why the hallway video was irrelevant, repetitive, unnecessary, or against institutional safety of the correctional center. *Piggie*

*v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003). The Court, being unable to manufacture an argument in favor of Respondent's lack of response, finds Petitioner's due process was violated.

### IV. Conclusion

The Court hereby **GRANTS** Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) and **ORDERS** Respondent to add 27 days good time credit to Petitioner's sentence and recalculate Petitioner's total time.

**IT IS SO ORDERED.**
**DATED: November 18, 2022**

                                            **/s J. Phil Gilbert**
                                            **J. PHIL GILBERT**
                                            **UNITED STATES DISTRICT JUDGE**